IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KILSEY SHEARRILL, # B-79268,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| vs.   ) | Case No. 13-cv-859-MJR |
| ) | |
| MICHAEL P. ATCHISON,   ) | |
| MAJOR HASSEMEYER,   ) | |
| and RICHARD HARRINGTON,   ) | |
| ) | |
| Defendants.   ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving a life sentence for murder, as well as sentences for three other offenses. Plaintiff claims that Defendants have deprived him of a liberty interest without due process by holding him in administrative segregation, where he has been subjected to harsh and unsanitary living conditions.

More specifically, Plaintiff states that he was transferred from Pontiac Correctional Center to Menard on August 2, 2012. He and 13 other inmates were being held in an Administrative Detention Re-Entry Management Program, which gave each prisoner the opportunity to earn his way through several levels of increased privileges to ultimately be placed back into general population, if they demonstrated positive behavior (Doc. 1, pp. 7-8). After about 60 days, Defendant Atchison (Menard Warden at that time) promoted the other 13 inmates to "Phase III" of administrative detention, and thereafter reassigned them to general population

on October 25, 2012. However, on that date Defendant Atchison decided to continue to hold Plaintiff in administrative detention, and further demoted him to "Phase I," the most restricted level. The reason for this action was that he believed Plaintiff to be in a leadership position with a security threat group ("STG") that had been responsible for "unauthorized gang activities" before Plaintiff's transfer to Menard. Defendant Atchison kept Plaintiff out of general population as a precautionary measure for institutional safety and security (Doc. 1, pp. 7-8).

Plaintiff asserts that his demotion and continued confinement in administrative detention amounted to a denial of due process, an abuse of the warden's discretion, and defeated the purpose of the incentive-based behavioral management program (Doc. 1, pp. 8-9). He had not broken any rules or given any cause to justify the demotion. Plaintiff further claims that Defendant Atchison took this action against him in retaliation, based on the assumption that Plaintiff was a leader of a STG (Doc. 1, p. 10). Defendants Harrington (current Menard Warden) and Hassemeyer (correctional officer) continued Plaintiff's confinement in administrative detention (Doc. 1, p. 13).

Since September 7, 2012, Plaintiff has been housed in an administrative detention cell that had no heat or hot water through the entire winter (Doc. 1, p. 11). Plaintiff became ill several times from having to wash his body with cold water in the cold cell. In addition, the toilet leaked, causing foul odors in the cell, and the plumbing did not function properly. Plaintiff complained about these conditions to Counselor Barbara Mueller (who is not named as a defendant), and filed grievances, but obtained no relief. Plaintiff's housing wing was also infested with mice. Many items in Plaintiff's property box were destroyed or damaged by them, and the cell was contaminated with mouse feces and the smell of mouse urine (Doc. 1, p. 12). Defendants Hasemeyer and Harrington did not allow inmates in administrative detention to have

disinfectant to clean their cells. For about 90 days, Plaintiff had to rely on guards to turn the light in his cell on or off, and they often left the light on for hours while Plaintiff was trying to sleep.

Plaintiff seeks compensatory and punitive damages.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

For the convenience of the Court, Plaintiff's claims are divided into the following counts:

**Count 1:** Deprivation of a liberty interest without due process, for confining Plaintiff in administrative detention;

**Count 2:** Retaliation claim for holding Plaintiff in administrative detention because of his purported leadership position in a gang;

**Count 3:** Eighth Amendment claim for subjecting Plaintiff to unconstitutional conditions of confinement.

After fully considering the allegations in Plaintiff's complaint and incorporated exhibits, the Court concludes that his pleading fails to state any constitutional claim upon which relief may be granted. The complaint and this action are subject to summary dismissal. However, Plaintiff shall be given leave to amend his complaint as to the allegations in **Count 3**, in order for the Court to determine whether that claim may merit further review.

**Count 1**

Plaintiff argues that his placement and retention in administrative detention was a

disciplinary action, imposed upon him without any notice, formal charges, or hearing.  However, Plaintiff misapprehends the nature of his confinement.  Administrative detention or segregation is not the same as disciplinary segregation, which is a sanction for a violation of prison rules.  Before disciplinary segregation may be imposed, a prisoner must be afforded certain minimal due process protections.  *See Wolff v. McDonnell*, 418 U.S. 539, 563-72 (1974).

However, an inmate's placement or continued confinement in administrative detention does not implicate a constitutionally protected liberty interest.  *Crowder v. True*, 74 F.3d 812, 814-15 (7th Cir. 1996).  Illinois statutes and correctional regulations do not impose limitations on the discretion of prison officials to place inmates in administrative segregation, including investigative or temporary lockdown or confinement and involuntary protective custody.  Accordingly, there is no liberty interest implicated by an inmate's placement in these forms of segregation.  *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995); *Pardo v. Hosier*, 946 F.2d 1278, 1281-84 (7th Cir. 1991); *Kellas v. Lane*, 923 F.2d 492, 494-95 (7th Cir. 1991); *see generally Sandin v. Conner*, 515 U.S. 472, 483 (1995); *Hewitt v. Helms*, 459 U.S. 460 (1983).  Although a prisoner in administrative detention may be subjected to more burdensome conditions than he might face in general population, those conditions are "within the normal limits or range of custody which the conviction has authorized the [government] to impose."  *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (transfer of inmates to prison with more burdensome conditions of confinement not a violation of due process); *see Sandin*, 515 U.S. at 477.  It does not constitute a "grievous loss" of liberty, *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972), an atypical and significant hardship on the prisoners generally in relation to the ordinary incidents of prison life, nor a dramatic departure from the basic conditions or duration of the prisoner's sentence.  *Sandin*, 515 U.S. at 481-85.

Because placement in administrative detention does not implicate a prisoner's liberty interest, no due process requirements apply. Defendant Atchison was not obligated to give Plaintiff advance notice or a hearing before making the decision to keep him in administrative detention, nor were the other Defendants required to afford him any process when they decided to maintain this placement. Accordingly, Count 1 fails to state a constitutional claim upon which relief may be granted, and shall be dismissed with prejudice.

**Count 2**

Plaintiff asserts that by keeping him in administrative detention and demoting him to the most restricted level, Defendant Atchison retaliated against him because of Plaintiff's alleged leadership position in a gang. This theory likewise fails to state a claim upon which relief may be granted.

Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if the officials' actions would not independently violate the Constitution. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.")); *Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir. 2000); *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000) ("a prison official may not retaliate against a prisoner because that prisoner filed a grievance"); *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory transfer); *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (retaliation for filing lawsuit).

However, an inmate's First Amendment rights may be limited where they collide with legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 91-93 (1987); *Watkins*

*v. Kasper*, 599 F.3d 791, 795 (7th Cir. 2010) (where prisoner raised his verbal complaint in a disruptive, confrontational manner inconsistent with the legitimate penological interests of maintaining order and discipline, he lost his First Amendment protection and could not maintain a claim for retaliation on account of that complaint).  An inmate's affiliation with or leadership in a prison gang is not entitled to First Amendment protection.  *Westefer v. Snyder*, 422 F.3d 570, 574-75 (7th Cir. 2005) (prison gangs are "a manifest threat to prison order" and prisoners do not have a First Amendment right to belong to a gang).  Thus, Plaintiff's alleged involvement with a gang is not "protected activity," and cannot form the basis for a claim of unconstitutional retaliation.  Count 2 shall be dismissed with prejudice.

**Count 3**

The combination of conditions under which Plaintiff was housed – prolonged lack of heat and hot water, exposure to the odors of the leaking toilet, mouse infestation, and the lack of cleaning supplies – raises Eighth Amendment concerns.  In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims.  *See McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *Wilson v. Seiter,* 501 U.S. 294, 302 (1991).  The objective conditions must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  At the pleadings stage, Plaintiff's allegations satisfy this objective component.

However, a plaintiff must also demonstrate the subjective component to an Eighth Amendment claim.  In other words, a prison official who was directly responsible for the objectionable conditions must have had a sufficiently culpable state of mind.  *See Wilson*, 501 U.S. at 298; *McNeil,* 16 F.3d at 124.  In conditions of confinement cases, the relevant state of

mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 837 (1970); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842.

In the instant case, Plaintiff states that he complained about the conditions in his cell to Counselor Mueller, but he does not say that he brought his concerns to the attention of any named Defendants or any other prison staff who might have been responsible for correcting the problems. He states that Defendants Hassemeyer and Harrington did not allow him to have disinfectant to clean the cell, but there is no indication they were aware of the problems Plaintiff describes, nor that they were personally responsible for the cell conditions. Plaintiff may believe that the prison warden is legally liable for any constitutional violation that occurs in a prison, but this is not the case. The doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001). In order to be held individually liable, "a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Id.* (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

Because Plaintiff's complaint fails to indicate that any Defendant was deliberately indifferent to the harm and health risks he faced from the conditions in his cell, Count 3 fails to state a claim upon which relief may be granted, and shall be dismissed without prejudice. Plaintiff shall be given one opportunity to submit an amended complaint **on this count only**, as described below. If the amended complaint still fails to state a claim, or if Plaintiff does not

submit an amended complaint, the entire case shall be dismissed with prejudice, and the dismissal shall count as a strike pursuant to § 1915(g).  The amended complaint shall be subject to review pursuant to § 1915A.

**Pending Motion**

Because Plaintiff shall have an opportunity to submit an amended complaint, his motion for recruitment of counsel (Doc. 3) shall be held in abeyance pending receipt and review of the amended complaint.

**Disposition**

**IT IS HEREBY ORDERED** that the complaint (Doc. 1) is **DISMISSED.  COUNTS 1 and 2** of the complaint are **DISMISSED WITH PREJUDICE.  COUNT 3** is **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file his First Amended Complaint, stating any facts which may exist to support a deliberate indifference claim **IN COUNT 3 ONLY** (unconstitutional cell conditions).  The amended complaint must name the individual Defendant(s) directly responsible for the alleged constitutional deprivations, and must be filed within 35 days of the entry of this order (on or before October 23, 2013).  An amended complaint supersedes and replaces the original complaint, rendering the original complaint void.  *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004).  The Court will not accept piecemeal amendments to the original complaint.  Thus, the First Amended Complaint must stand on its own, without reference to any other pleading.  Should the First Amended Complaint not conform to these requirements, it shall be stricken.  Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint.  Failure to file an amended complaint shall

result in the dismissal of this action with prejudice. Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 18, 2013**

s/ MICHAEL J. REAGAN
United States District Judge
